DETERMINED IN THE

# COURT OF ERRORS AND APPEALS

OF THE

## STATE OF NEW JERSEY,

MARCH TERM, 1891.

JAMES H. MUCHMORE, PLAINTIFF IN ERROR, v. SYL-
VANUS D. BUDD, DEFENDANT IN ERROR.

One Cunningham made an absolute written bill of sale of all his property,
except wearing apparel, to one Somerville, who was the secretary of a
corporation, the principal creditor of Cunningham. Before the exe-
cution of the bill of sale, the corporation paid a judgment against
Cunningham and also a bill for goods then delivered to him. The bill
of sale was accompanied by a parol agreement that Somerville should
sell the goods, and out of the proceeds should first reimburse his prin-
cipal, the corporation, for its advances, then pay the debt of the com-
pany and the debts of three other creditors *pro rata*, and return any
surplus to Cunningham. The latter person reserved the right to
redeem, upon paying the amount of said advances and debts before
the sale of the property by Somerville. There was no surplus. There
were other creditors. *Held*, that this transfer was not an assignment
for the benefit of creditors within the meaning of the act. *Rev., p. 36.*
*Held*, that it was a mortgage. *Held*, that the parol reservation accom-
panying the written bill of sale was a badge of fraud, but not conclu-
sive evidence of fraud. *Held*, that the reservation of the surplus by
the vendor is not proof of fraud *per se*.

On error.

VOL. XXIV. 24 [369]

This cause was tried at Essex Circuit before the court without a jury.

The court found the following facts to have been proved:

On February 27th, 1889, James S. Cunningham was the owner of the goods and chattels described in plaintiff's declaration.

Previous to that day judgments had been entered against said Cunningham in favor of J. C. Smith and others, creditors, on which there was due $337.01. Executions had been issued upon these judgments, levies taken on the said goods and chattels, and the store in which they were was closed and in possession of the officers. On that day Cunningham was indebted to the following named persons in the amounts set opposite their respective names, in addition to said judgments:

| | | |
|---|---|---|
| Wilkinson, Gaddis & Co............. ......... ............ | $353 | 75 |
| William Titus....... ......... ......... ......... ............ | 75 | 37 |
| Francis H. Leggett & Co.......... ......... ..... ...... | 249 | 88 |
| Sharp, Taylor & Perkins... ......... ....., ......... ...... | 159 | 01 |
| J. H. Muchmore & Son.......... ......... ..... ......... | 668 | 89 |
| And to other creditors to about the sum of... ......... | 500 | 00 |

On that day, February 27th, 1889, said Cunningham transferred to Alonzo Somerville, who was secretary and an employe of the corporation Wilkinson, Gaddis & Co., by " a written bill of sale, the said goods and chattels, being all the property owned and possessed by Cunningham, excepting wearing apparel." While this instrument was being drawn, and about the hour of the transfer of the said property to said Somerville, said Muchmore & Son sent to the store their wagon with goods, amounting in value to $61.71, which they were about to deliver to Cunningham, but finding that the said stock was about to be transferred as aforesaid, refused to deliver the same; whereupon said Somerville intervened, and procured the delivery of the said goods to him upon condition that Wilkinson, Gaddis & Co. would pay Muchmore the amount represented by said goods, which was afterwards done.

At the same time Wilkinson, Gaddis & Co. paid the amount due upon the judgments and executions which were levied against the said goods and chattels, namely, $337.01, which were thereby satisfied; and said Somerville immediately accepted from the said Cunningham the instrument in writing, and at once took actual possession of the said store and all the goods and chattels named in the plaintiff's declaration, and also took an assignment of the lease upon the said premises, and at once opened the store so that goods could be sold therefrom. Besides the above, no consideration passed from Somerville to Cunningham for the said transfer.

The said transfer of title and possession was made to secure the said accounts of Wilkinson, Gaddis & Co .......................................................... $335 75
The amount which they paid to the said judgment creditors ....................................................... 337 01
To amount which they paid to Muchmore & Son.... 61 71
The account of William Titus............................. 75 37
The account of Francis H. Leggett & Co............. 249 88
And the account of Sharp, Taylor & Perkins........ 159 01

under the contemporaneous verbal agreement that Somerville should sell the goods and chattels at public or private sale, for the best price that he could realize, and divide the proceeds *pro rata* among the last mentioned creditors, according to the amounts of their respective claims, first, however, paying Wilkinson, Gaddis & Co. in full the sum of $398.72, being the amount paid by them to the said judgment creditors and said Muchmore & Son, and that he would pay the overplus, if any, to Cunningham; also, that Cunningham might redeem the said goods and chattels at any time before any such sale and disposal thereof, by paying to the last mentioned creditors the amount of their claims, together with the sum of $398.72 paid by Wilkinson, Gaddis & Co., as above stated.

Said written instrument was neither acknowledged nor recorded, but immediately upon its execution and delivery to Somerville, Somerville took actual custody and possession of the goods and chattels therein named, and held and retained the actual custody and possession thereof from that time until the sale thereof by him, as hereinafter stated.

On March 1st, 1889, J. H. Muchmore & Son recovered a judgment against Cunningham in the Hudson County Circuit Court for said sum of $668.89, upon which execution was issued on the same day; under which, also on the same day, the sheriff of Hudson county levied upon the right, title and interest of the said Cunningham in the said goods and chattels, and at the same time advertised such right, title and interest for sale. The sheriff of Hudson county did not otherwise disturb the said Somerville in the possession of said goods and chattels.

On March 5th, 1889, the defendant, Sylvanus D. Budd, purchased the said goods and chattels from Somerville, at private sale, for $1,000, which is admitted, for the purpose of this suit, to be the actual value of the goods and chattels, and at once took possession thereof.

At the time of said purchase Budd had knowledge of said levy and advertisement of sale.

On March 9th, 1889, the said sheriff sold the right, title and interest of the said Cunningham in the said goods and chattels by virtue of said execution, and plaintiff bought them.

On March 11th, 1889, the plaintiff demanded the said goods and chattels from the defendant without offering to redeem the same or pay the claim to secure which the bill of sale was made, and the defendant refused to deliver them to him. The bill of sale mentioned by its terms sold and granted, for the consideration of $1,050.38, to Somerville, the described goods and accounts due or to grow due to the vendor, and appointed Somerville the vendor's attorney to collect the accounts and hold the same for the vendee. It concluded with a warranty of title.

It was an absolute sale of the goods and an absolute assignment of the accounts to Somerville.

The Circuit Court found in favor of the defendant.

From the judgment entered upon this finding this writ of error is taken.

For the plaintiff in error, *Howard W. Hayes.*

I. The main point in this case is as to whether an assignment by an insolvent debtor of all his property to a trustee for the benefit of certain of his creditors to the exclusion of others, is invalid as to the other creditors, when the assignment is not in the form contemplated by the Assignment act, and is not intended to come under its provisions. The insistment of the plaintiff in error is, that such an assignment is invalid.

The first section of the Assignment act says: "Every conveyance or assignment made by a debtor or debtors of his, her or their estates, real or personal, or both, in trust to the assignee or assignees, for the creditors of such debtor or debtors, shall be made for their equal benefit, in proportion to their several demands, to the net amount that shall come to the hands of said assignee or assignees for distribution."

If the statute is to be construed to mean what it says, then any conveyance of a debtor's estate, *i. e.*, all his property, to a trustee for the benefit of some of his creditors to the exclusion of others is in contravention of the statute and therefore void.

There has been no decision in this state necessarily involving this point; but there are *dicta* directly in point, both in the Supreme Court and the Court of Chancery.

In the case of *Tillou* v. *Britton,* 4 *Halst.* 120, Justice Drake, in 1827, holds that a transfer of a single promissory note did not come within the statute, but intimated that any transfer of *all* of a debtor's estate would come within it. He says (*p.* 138): "The operation of the statute must be confined, if not to cases where a trust is created, at least to cases where there is something of universality in the assignment,

or, in the language of the act, where the debtor's *estate* is assigned, which should be done either collectively, or, if in parcels, and to particular creditors, the assignment should be part of a particular system or plan, designed to transfer the debtor's *estate* in such manner as to prevent an equal and just distribution of it among his creditors."

The syllabus of the case is: " *   *   * The operation of the act must be confined, if not to cases where a *trust* is created, at least to cases where there is something like universality in the assignment."

In *Owen* v. *Arvis*, 2 *Dutcher* 22, 34, decided in 1856, Chief Justice Green, in speaking of the assignment made in that case, said:

" Viewed in this aspect, the transaction was in substance an assignment for the benefit of the grantor's creditors. Though not in form a conveyance to an assignee in trust for the creditors of the debtor, and therefore not within the terms of the act, it is so in substance, and therefore in contravention of the policy of the statute, which prohibits all preferences in assignment of one creditor over another."

The latest case is that of *Livermore* v. *McNair*, 7 *Stew. Eq.* 478, 481, decided by Vice Chancellor Van Fleet in 1881.

The learned Vice Chancellor said, on *p.* 481:

" It is intended that the transaction, when viewed in its substance and practical effect, is an assignment of all the debtor's estate in trust, for the benefit of certain preferred creditors to the exclusion of all others. If this contention is correct, there can be no doubt that the transaction must be adjudged invalid as to the complainants, for the statute regulating such assignments expressly declares that every conveyance or assignment made by a debtor of his estate, real or personal, or both, in trust to an assignee, for the creditors of such debtor, shall be made for their equal benefit, in proportion to their several demands,   *   *   *   and all preferences of one creditor over another   *   *   *   shall be deemed fraudulent and void."

These decisions, extending over a period of sixty years, acquiesced in by bench and bar, cannot be without weight.

There is another ground for saying that the prohibition of the statute is not confined to assignments made under it. The cases of *Garretson* v. *Brown*, 2 *Dutcher* 425, 438 ; *Hays* v. *Doane*, 3 *Stock.* 84, 91, seem to hold that an assignment under the act passes all the debtor's property, real and personal ; yet the first section of the act applies to every assignment of the debtor's estate, *real or personal.*

The following cases hold that a transfer by a debtor of all his property, though not intended to come under an Assignment act, must nevertheless be governed by the provisions of the act. *White* v. *Cotzhausen*, 129 *U. S.* 329 ; *Winner* v. *Hoyt*, 66 *Wis.* 227, 239 ; *Freund* v. *Yaegerman*, 26 *Fed. Rep.* (*Mo.*) 814.

Winner *v.* Hoyt is on all fours with this case.

In *White* v. *Cotzhausen, supra,* it was held, under the wording of the Illinois statute, that preferences in this instrument itself did not avoid it, but that the preferences were void.

Under the New Jersey statute the courts have always held that such preferences invalidated the assignment itself. *Varnum* v. *Camp,* 1 *Green* 326 ; *Garretson* v. *Brown*, 2 *Dutcher* 425, 437, 442.

If the defendant insists that the preferences in this case were outside of the bill of sale and not part of the transaction, and that the parol contemporaneous agreement cannot be considered, it is replied that then the transfer of Cunningham's property was voluntary and void as to the plaintiff. In order to have any consideration for the transfer, the parol agreement must be considered part of it.

II. The assignment is void for another reason.

It was agreed that any surplus that might be realized over the claims of the preferred creditors should be repaid to the debtor. Such a provision defrauds the other creditors of their rights in such surplus.

Assignments containing such provisions have been continually held void, even in states where preferences are

allowed. *Goodrich* v. *Downs,* 6 *Hill* 438, cited in *Owen* v. *Arvis, supra; Barney* v. *Griffin,* 2 *N. Y.* 365; *Collomb* v. *Caldwell,* 16 *Id.* 484; *Leitch* v. *Hollister,* 4 *Id.* 211; *Therasson* v. *Heickok,* 37 *Vt.* 454; *Truitt* v. *Caldwell,* 3 *Minn.* 364; *Banning* v. *Sibley, Id.* 389; *Green* v. *Trieber,* 3 *Md.* 11; *Pierson* v. *Manning,* 2 *Mich.* 445, 449; *Selz* v. *Evans,* 6 *Bradw.* (*Ill.*) 466; *Lill* v. *Brant, Id.* 366.

III. The defendant seeks to avoid these difficulties by claiming that the sale to Somerville was a mortgage and not an assignment. While it may have had one of the main incidents of a mortgage, viz., a sort of equity of redemption, it lacked an equally essential incident, viz., title in the grantor until condition broken; and while as between Cunningham and Somerville, the grantor and grantee, a court of equity might have called the transaction a mortgage, it was not a mortgage as to third parties.

The following cases support this view: *Koch* v. *Briggs,* 14 *Cal.* 256; *McMenomy* v. *Murray,* 3 *Johns. Ch.* 435; *Marvin* v. *Titsworth,* 10 *Wis.* 320.

In the case of *McMenomy* v. *Murray, supra,* the opinion is by Chancellor Kent, and he held that a conveyance to a creditor, in trust to sell, under certain conditions, and pay his debt, rendering the surplus to the debtor, was not a mortgage.

The case of *Marvin* v. *Titsworth, supra,* is well considered and ably maintains the position that a conveyance to a third person in trust to sell and pay creditors, rendering the surplus to the grantor, is not a mortgage, a distinction being made between such a conveyance directly to the creditor and one to a third person.

If this court should be of the opinion that the transaction in this case was a mortgage, even then it will not avail the defendant.

The reason the defendant claims that the transaction was a mortgage is, that he may say that the unpreferred creditors had a right to levy on the equity of redemption, and there-

fore there was no secret trust to their hindrance, as claimed
in the second division of this brief.

The obvious reply to that is, that the plaintiff could not
have effectually levied on and sold Cunningham's equity of
redemption for two reasons.

*First.* It was a secret parol trust, known only to Cun-
ningham and Somerville, of which the plaintiff had no evi-
dence.

*Second.* It could not have been established in a court of
law, as a court of law cannot take cognizance of a parol
defeasance of an absolute conveyance and make a mortgage
of it. 1 *Jones Mort.*, § 244, and cases cited.

IV. The fact that the levy was on the assignor's *right, title
and interest* has no effect on the case.

As far as the plaintiffs in execution are concerned, the
debtor was the absolute owner of the goods, and a sale of his
*right, title and interest* passed the complete title.

The levy was made in that form by the sheriff, according
to the general custom, to protect him from a possible suit for
trespass in trover.

It cannot be successfully maintained that the levy was only
on Cunningham's equity of redemption, for, as shown above,
if the assignment was valid he had no legal interest that
could be levied upon.

V. The defendant stands in no better position than Somer-
ville, as he is not *bona fide* purchaser.

1. He had knowledge of Muchmore & Son's levy, which
put him upon inquiry.

2. The execution, under which the plaintiff purchased,
bound the goods from the time of the levy, under the act
concerning executions.

3. Muchmore & Son rescinded their sale by the levy under
their execution, and in such cases a purchaser, to be protected,
must buy before the rescission of the sale. *Benj. Sales, p.*
649; *Morewood* v. *The Railway Co.*, 3 *Hurlst. & N.* 798.

As the Assignment act does not contain a clause like the
one in the statute of fraudulent conveyances, saving the

rights of *bona fide* purchasers for value, it may be doubted whether even *bona fides* would have protected the defendant.

VI. The plaintiff can attack the assignment in a court of law. Conveyances contrary to the statutes of 13 and 27 Elizabeth have always been held void in common law courts, and the Assignment act is of the same class of acts. If the legislature make an agreement void, it is void everywhere, at law as well as in equity.

The courts of law in this state have always felt competent to deal with such questions arising under the Assignment act. *Tillou* v. *Britton,* 4 *Halst.* 120 ; *Varnum* v. *Camp,* 1 *Green* 326 ; *Garretson* v. *Brown,* 2 *Dutcher* 425 ; *Owen* v. *Arvis, Id.* 22.

For the defendant in error, *Joseph Coult.*

The facts agreed upon in this case raise the question whether a debtor, in failing circumstances, may create a lien upon his property in favor of certain creditors to whom he owes *bona fide* debts.

On February 27th, 1889, Cunningham, whose debts exceeded the value of his property, gave a bill of sale to Somerville of all his estate, which bill of sale was accepted by Somerville as a mortgage to secure *bona fide* debts of certain of Cunningham's creditors. Somerville went into immediate possession, paid off certain liens on the property, and retained possession until a sale by him.

The plaintiff, after the transfer of the title and possession, levied upon the *right, title and interest* of Cunningham in that property, sold it out, purchased it, and now claims the right of possession of the property to the exclusion of the rights of Budd, the person to whom the same was sold by Somerville.

There is no fraud *in law* disclosed, the statute of Elizabeth cannot be invoked to set this mortgage aside, and the rights of Somerville, or Budd, the vendee, cannot be attached on that ground.

The only ground upon which any attack can be made is,

that the transfer to Somerville was in contravention of our statute of assignments for the benefit of creditors.

That statute provides that every conveyance or assignment made by a debtor of his estate, in trust to an assignee for the creditors of the debtor, shall be made for their equal benefit, and that all preferences of one creditor over the other shall be deemed fraudulent and void, excepting mortgage and judgment creditors.

I. The transaction set out in the state of facts was a *mortgaging* of the goods and chattels described in the bill of sale. This appears from the fact that it was made to secure creditors, and that Cunningham had a right to redeem.

Somerville perfected his right as a mortgagee by taking immediate possession of the mortgaged chattels, and retaining actual possession thereof until the sale, which is a complete compliance with our chattel mortgage law.

II. The transaction does not fall within our statute in relation to assignments for the benefit of creditors. In the first place, it does not purport to be such on the face of it; it does not purport to convey all the debtor's estate; it does not purport to be in trust for the creditors of Cunningham; no preferences appear on the face of the paper; there is no inventory of the property and list of creditors annexed to it; Somerville did not treat it as a general assignment for the benefit of creditors, because he gave no notice, made no inventory, filed no bond, did not record his deed of assignment, and took none of the proceedings provided by our Assignment act.

In every case of assignment, the title will pass; it is not the conveyance or assignment which is made void by the first section of our Assignment act, it is the preferences which are made void.

The first interpretation of our statute is in *Tillou* v. *Britton*, 4 *Halst.* 120.

The next is in the case of *Garretson* v. *Brown*, 2 *Dutcher* 425, and at *p.* 435, bottom.   (Read what Chief Justice Green says on *pp.* 435 and 436.)

Subsequently Chief Justice Green was made Chancellor, and in 1862 decided the case of *Benedict* v. *Benedict*, 2 *McCart.* 150, and at bottom *p.* 156.

From these cases we gather it to have been the idea of Chief Justice Green that a general assignment of all the debtor's property for the benefit of his creditors, and which purported on its face to be such, must be for their equal benefit; that the title would pass at all events to the transferee, and that it was *only the preferences which were contained in the instrument itself which would make the instrument void*, and relief against such an instrument could only be had in equity ; law courts have not the machinery to adjust the rights of the parties.

The right of a debtor to prefer his creditors by mortgage, judgment or otherwise, has not been doubted in this country since the case of *Riggs* v. *Murray*, 2 *Johns. Ch.* 565, and the case of *Grover* v. *Wakeman*, 11 *Wend.* 187.

It is recognized in the State of New Jersey by a large number of cases in which the method by which the preference has been made, every case in which it has been questioned, are cases in which the transaction involves some question of the violation of the statute of frauds.

Such was the case of *Owen* v. *Arvis*, 2 *Dutcher* 22.

There the court set aside the arrangement that had been made, because the grantor had reserved a secret trust to himself in contravention of the statute of frauds.

Such also was the case of *National Bank of the Metropolis* v. *Sprague*, 6 *C. E. Gr.* 530, where the Court of Errors held that the mortgage in question was void, not because it contravened the assignment law, but because it was in contravention of the statute of frauds.

The most recent case is *Livermore* v. *McNair*, 7 *Stew. Eq.* 478, in which Vice Chancellor Van Fleet carried the doctrine much further than any other judge has ever done. The cases cited by him at the foot of *p.* 481 do not support the conclusion which he draws from them. That case was properly decided on the ground that the defendants were guilty of

actual fraud on creditors. The other ground stated by the Vice Chancellor was not warranted by the facts. At any rate, the relief asked by the plaintiff on that ground could be obtained only by bill in equity.

The plaintiff in this case is not in position to question the transfer. His judgment was obtained after the transfer was made; his execution levied upon the *right, title and interest of Cunningham, the assignor*, if he may be so called, and it was only that right, title and interest which could be sold under that levy. Cunningham could not question the transfer which he made to Somerville; it was certainly good as between the parties. This levy must be held to have been made only upon Cunningham's equity of redemption in the property, and the purchase at the sheriff's sale thereunder would give the purchaser only that equity of redemption, and he would have no right to the possession of the property without first offering to redeem.

III. There was a valuable consideration to support the transfer. The question of adequacy will not be considered by the court. In consideration of the past indebtedness, and of the cancellation of the present liens, and of the payment of the bill which had been contracted with the plaintiff, the transfer was made. There is nothing fraudulent in fact, or fraudulent in law, and this plaintiff ought not to be allowed to take advantage of the statute to recover $1,000 in this suit, when his claim was less than $700.

The opinion of the court was delivered by

REED, J. It appears from the facts found by the trial court, and already stated in full, that the contest was between, as defendant, a purchaser from one Somerville, and, as plaintiff, a purchaser at a sheriff's sale of the same property under a levy made upon an execution against one Cunningham.

Somerville had taken a bill of sale from Cunningham previous to the levy under which the sale was made to the plaintiff. If that transfer was good in law, then the title

which Somerville transferred to the defendant was superior to the title of the plaintiff.

The counsel for the plaintiff have therefore attacked the legality of the transfer of the property from Cunningham to Somerville.

They insist that, as against creditors of Cunningham not parties to that transfer, it was a nullity.

There are three lines of attack.

*First.* It is insisted that the transfer made by Cunningham to Somerville is void, because it is in contravention of the act concerning assignments for the benefit of creditors.

*Second.* That it is void by force of the statute of frauds.

*Third.* That it is invalid for want of a legal consideration.

Under the first mentioned head, it is insisted that the transfer of the property from Cunningham to Somerville was an assignment of Cunningham's estate, in trust to an assignee for the creditors of said Cunningham, within the meaning of the first section of the Assignment act. It is thereupon argued that, inasmuch as the assignment is for the benefit of some, to the exclusion of other creditors, a preference arises which avoids the entire transaction.

At the outset, I wish to guard against any apparent admission, that if it should be conceded that the transfer attacked is an assignment, the result claimed would follow. It has never been adjudged by this court that a preference contained in an assignment operates to avoid the transfer *in toto.* The case of *Garretson* v. *Brown*, 2 *Dutcher* 425, affirmed in this court (4 *Dutcher* 644), called for no opinion upon this point.

The query propounded by the facts in that case was, whether a deed and a transfer of notes, made by a debtor previous to an assignment, affected the lawfulness of the assignment itself. It was held that the assignment was valid. Regarding the question as an open one, it seems to me extremely difficult to accord a significance to all parts of the first section of the Assignment act, by the adoption of the construction now claimed for it. The last clause of that section, in express terms, makes void the preferences. The first

part of the section contains no words of like import respecting an assignment containing preferences. If such an assignment is void, then the preferences fall with the assignment itself by force of the first clause. The second clause is utterly meaningless.

But a construction of the act which results in sweeping away the preferences, but compels the assignee to execute his trust for the proportional benefit of all the creditors, conforms to the fundamental rule of statutory construction, that every part of a statute shall have its due effect.

This construction would leave the power of sale conferred upon the assignee unimpaired, and his vendee would acquire a complete title.

This question, however, is not, in my judgment, involved in this case. For I am unable to regard the transfer, now attacked as an assignment, within either the letter or spirit of the Assignment act.

Let us recall the facts. Cunningham was indebted to certain persons, among whom was a corporation existing under the name of Wilkinson, Gaddis & Co. Somerville was the secretary of this corporation. On February 27th, officers were in possession of Cunningham's property, under an execution issued on a judgment entered in an action brought by another creditor. Somerville sought to secure the debt due to the corporation, of which he was an officer. Cunningham agreed to give him a bill of sale. Before the bill of sale was delivered, the company paid off the judgment already mentioned. It promised to pay, through Somerville, and afterward did pay, for a bill of goods that day delivered to Cunningham by Muchmore & Son. The bill of sale was then delivered, for which, in advances and in the debt due, there existed a consideration of over $700.

So far, the complexion of the facts do not furnish a hint of an assignment.

But there was a verbal agreement which accompanied the bill of sale. Cunningham imposed upon Somerville the condition, which Somerville accepted, that Somerville should sell

the goods, and, after reimbursing his company for their advances, should apply the proceeds to the payment, not only of the debt of the company, but also of the debts of three other creditors.

If there was not enough to pay all in full he was to pay them *pro rata*. If there was more than sufficient to pay them he was to return the balance to Cunningham. Cunningham retained the right to redeem the property, at any time before their sale by Somerville, by the payment of these advances and debts in full.

From this statement of the character of the transaction, it is transparent that the parties to it had not the faintest suspicion that Cunningham was making a statutory assignment. There were no words employed in the negotiation which were appropriate to or suggestive of an assignment. There was no list of creditors nor inventory of property, nor was there any talk of these accompaniments of a statutory assignment. No bond of Somerville as assignee; no record of any paper; no proceeding in the Orphans' Court; no notices; no distribution of dividends under judicial supervision; no filing of claims; no discharge from any claim on account of dividend received; none of these statutory features of an assignment appears, at any moment, to have been contemplated. Further words, to show that the transaction was not intended as an assignment under the terms of the statute, would be wasted.

But it is insisted that the first section of the act includes every conveyance of property to a trustee for the benefit of a creditor or of creditors. It is admitted that a debtor may sell, pledge or mortgage his property directly to one or more creditors, but it is insisted that the moment he does this not directly, but to another person for the use of such creditors, the statute seizes upon the transaction. The test thus applied is, does a trust arise? If so, it is an assignment.

I am unable to yield my assent to this view.

It is, as a matter of course, true, that an assignment, from its essential character, implies a trust. But the opposite is

not true, that whenever a trust is created an assignment springs into being.

Property may be sold, pledged or mortgaged in trust.

The trustee in each one of these classes of transfers holds a different interest from that of a trustee in another class, and a trustee under the Assignment act an interest differing from all the rest.

Now, I am of the opinion—

*First.* That the transaction now in question was a mortgage.

*Second.* That a mortgage is distinguishable from an assignment; and,

*Third.* That a mortgage to a trustee remains a mortgage and does not become an assignment by reason of the trust.

That the transfer was a mortgage seems obvious. As already remarked, the instrument of transmission was an ordinary bill of sale. The parol agreement reserved the right to redeem. A new debt was practically created at the time by the assumption by the corporation to pay the price of the goods delivered by Muchmore. If the company had attempted to hold the goods as absolute owners by virtue of the bill of sale, a court of equity would have transformed it into a security. Had the amount of the advances and debts been tendered to Somerville before he sold, no one would doubt for a moment that he would have been compelled to return the property. Unless it was intended as security, there existed no right to redeem, and, therefore, the reservation of that right manifests the intention of the parties to so regard it.

If it was for security, then it was a chattel mortgage.

Secondly, the statute concerning assignments does not include chattel mortgages within its terms, but deals with a different kind of transfers.

The Assignment act was not designed for the purpose of creating and regulating a new specie of instruments for the transmission of property. Its purpose was to regulate a class

of transfers already well known. They were called voluntary assignments.

They were employed by persons insolvent, or who thought themselves insolvent, to distribute their property to their creditors through a trustee styled an assignee. The transfer became effective without the assent of the creditors; it conveyed to the trustee an irrevocable power to sell the property and distribute the proceeds, and it stripped the debtor of all interest whatsoever in the property.

It was an instrument *sui generis* and the act was passed to compel equality in distribution among creditors whenever the debtor chooses to adopt this particular scheme for the payment of his debts. Until he does so adopt it, he retains the power to sell, pledge or mortgage the last remnant of his property to favored creditors. *Garretson* v. *Brown*, 2 *Dutcher* 425. In the language of Justice Potts, employed in Garretson *v.* Brown: "Until the debtor divests himself of the title to his property by assignment, his dominion over it is perfect, and he may use it for any lawful and honest purpose. The object to be gained by an assignment under the act is to get the benefit of the release which it provides."

Preferences by means of mortgages are recognized in the Assignment act itself.

The distinction between a mortgage and an assignment exists principally in the interest which the mortgagor retains in the property, namely, his equity of redemption. This can be levied upon under a common law execution, and a judgment creditor or a purchaser can protect his rights by redemption or any other act of which the mortgagor was capable. An assignment is intended as a payment and a mortgage as security. Incidentally there is a power of sale under the latter, and there may be said to be security in the former, but the primary objects are as stated.

The equity of redemption in the one and the want of it in the other is their distinguishing feature of difference. *Burrill Ass.*, §§ 6, 7.

Nor, in the third place, does the trust make the transfer any the less a mortgage. As already remarked, it is not the existence of a trust that distinguished an assignment, but of a peculiar kind of trust created by a voluntary assignment alone. So far as Somerville is related to the principal creditor, a trust can hardly be said to exist at all, except that kind of confidence which always obtains between an agent and his principal. He was acting for the corporation. He urged and consummated the transaction for the benefit of the company of which he was an officer. He stood for the corporation, and the sale was practically made to the company.

In relation to the other preferred creditors his position was different. But regarding his connection with them as that of a trustee, he was such as mortgagee and not as assignee.

The execution of mortgages, both real and personal, to trustees is the exertion of a legal right.

Mr. Powell discusses this class of mortgages in his authoritative work on this subject.

Any one recalling the frequent exercise of this power by railroad and other corporations, both solvent and crippled, to secure classes of bondholders and other creditors, would be surprised to learn that all these were voluntary assignments. An example of this kind of trust mortgages is afforded by the leading case of *Curtis* v. *Leavitt,* 15 *N. Y.* 143. And upon this point the following cases are pertinent: *Wilson et al.* v. *Russell et al.,* 13 *Md.* 494; *Woodruff* v. *Robb,* 19 *Ohio* 212; *Bugg* v. *Jerome,* 7 *Mich.* 145.

In the case of *Chapman* v. *Hunt,* 1 *McCart.* 149, a chattel mortgage was made by Hunt to secure a debt due to Hunt, and also to secure a debt due to Julia Ann Chapman. Chancellor Green said that it was not void on the ground that it was against the policy of the statute regulating assignments for the benefit of creditors, for, on its face, the instrument purported to be not an assignment of the defendant's property for the benefit of creditors, but a mortgage for the payment of certain specified debts.

In *Morse* v. *Powers,* 17 *N. H.* 286, one Morse made a mortgage of personal property to one Powers, conditioned to·, save Powers harmless from sundry liabilities incurred by him on account of Morse, and also to save one Robert Morse· harmless from liability from a note which was the proper debt of the other Morse. Chief Justice Parker said that the·. objection that the mortgage was invalid, because it was partly in trust for the benefit of R. Morse, and was in the nature· of an assignment for the benefit of creditors, could not be· sustained.

"It is not essential," he goes on to say, "to the validity of· a mortgage that it was to be wholly for the benefit of the· mortgagee, nor will a trust for the benefit of a third party, of· itself, give it the character of an assignment, within the act requiring assignments to comprehend all the property of the· debtor without preferences."

Indeed, deeds of trusts in the nature of mortgages, while· more similar in form to general assignments, are both in law and equity substantially the same as mortgages, the radical' distinction between them and assignments for the benefit of· · creditors exists, as in the case of mortgages, in the interest of. which the grantor still retains in the assigned property.. *Burrill Ass.,* § 8 ; *Perry Trusts,* § 602.

It is apparent, then, that the present transfer of property· was not in law an assignment, and it is equally patent that. it was not so intended.

But can this arrangement, although clearly a chattel mort-- gage, be impeached as an infringement upon the spirit of the Assignment act ? There are cases in our reports where judges· have indicated that a deed or mortgage, or a number of such instruments, although they bore no likeness to an assignment under the statute, were yet void because they contravened the· policy of the statute. *Owen* v. *Arvis,* 2 *Dutcher* 22 ; *Fair- child* v. *Hunt,* 1 *McCart.* 367 ; *Livermore* v. *McNair,* 7 *Stew. Eq.* 478.

In each of these cases the affair attacked was held to be· void by force of the provisions of the statute of frauds. I.

think it can be confidently stated that there exists no decision in this state which supports the doctrine that a sale or mortgage or pledge of property, which is otherwise valid, is voidable by reason of the existence of the Assignment act.

In each of the cases mentioned the transaction would have been held void, upon the same grounds upon which they were nullified, had no statute relative to assignments existed. And unless the present transfer is in contravention of the statute of frauds, I am of the opinion that it is entirely legal.

The next question is, whether the present transaction is void because it contravenes the statute of 13 Elizabeth. In treating of this phase of the case, it is essential that the condition of the record before us be kept in mind. The cause was tried in the Circuit Court without a jury. Certain facts were found, upon which facts, in connection with the bill of sale, the court directed judgment to be entered for the defendant. By the finding, the transfer was adjudged to be legal. It must be assumed that any question of fact in the case was resolved in favor of the *bona fides* of the transfer. This finding on writ of error, like the verdict of a jury, is conclusive that there existed no actual fraudulent intent to hinder or delay creditors.

The only question is, whether, upon the facts found, the transfer was fraudulent *per se*, so that the justice, upon these facts being conclusively proved before a jury, would have been compelled to direct a verdict in favor of the plaintiff.

The first query is respecting the effect of the contemporaneous verbal understanding, taken in connection with the written bill of sale. Does the fact that the written bill of sale was accompanied by a verbal understanding that it should operate only as a mortgage for third parties, affect the transfer in respect of creditors, and, if so, to what degree?

It is, I think, undeniable, that the whole transaction might have been the subject of verbal arrangement. Nothing in the statute of frauds required it to be proved by writing. And as possession of the property immediately passed, the sale, considered as a chattel mortgage, was valid without

recording, not only between the parties, but also as to third persons. The invalidity of the transfer is alleged to arise from the circumstance, that although an absolute bill of sale was made to Somerville, yet, by a verbal agreement, Cunningham reserved an equity of redemption in the goods sold; while the bill of sale purported to transfer all Cunningham's interest in the goods, yet, by another agreement, not a part of the writing, or in writing at all, he retained an interest.

The effect of such an agreement upon the attempt to transmit an interest in property has been the subject matter of considerable contrariety of opinion. It is generally regarded as a badge of fraud. But upon the point whether it carries with its presence an unexplainable inference of fraud, the courts have divided. My conclusion is, that each case must stand upon its own footing, and that no doctrine of fraud *per se* applicable to all cases alike ought to be laid down.

The rule which permits each case to be dealt with according to its individual character leaves to the court the privilege of discriminating between different kinds of reservations. The courts are always inclined to do this to meet the equity of each cause.

This is apparent in comparing two cases in the federal courts, namely, *Lukins* v. *Aird*, 6 *Wall.* 78, and *Gaffney's Assignee* v. *Signaigo*, 1 *Dill.* 158. In the first case, Aird, being indebted and insolvent, made a conveyance of certain lots to Spring, a creditor, who agreed that Aird should have the use of the lots for one year's rent free, with a privilege, so long as Spring did not desire to make any use of them himself or to sell them, of renting them at $100 a year.

The consideration for the deed was less on account of this agreement.

Justice Davis, in the Supreme Court, held that the conveyance was void, and that the fraud was an inference of law.

In the latter case Gaffney made an absolute deed of conveyance, but on a bill filed to set it aside for fraud, the facts were proved to be that it was made to secure certain moneys advanced to Gaffney by the grantee. Judge Dillon, in the

Circuit Court, on appeal from a District Court, held the conveyance to be valid as a security.

He says that the case is unlike *Lukins* v. *Aird, supra,* where a valuable right—that of possession—was secretly reserved to the failing debtor contrary to the terms of the deed. Here, he goes on to say, there was no absolute sale in fact, and no attempt to reserve a right at the expense of his creditors.

Thus, it is perceived, that when each case is left to be determined by its own circumstances, the facts presented in one may show such incontrovertible evidence of a fraudulent effect upon the creditors, that no other inference but that of fraud could be drawn, while the facts in another case, while showing a technical reservation *dehors* the writing, is still entirely free from any possibility of harm to creditors, or of any intention to harm them. A conspicuous example of such a difference is presented when considering, on the one hand, a deed designed for record, accompanied by a secret trust of great value to the debtor, as in Lukins *v.* Aird, and, on the other hand, a bill of sale of personalty not designed for record, accompanied by a parol reservation of a worthless equity of redemption.

I think the weight of authority is accordant with this view.

A secret trust inconsistent with the terms of the sale of property is evidence of fraud, but it is not conclusive evidence of fraud. This is the rule laid down in Massachusetts, in respect of conveyance of both real and personal property, in the case of *The Oriental Bank* v. *Hoskins,* 3 *Metc.* 332.

It is the rule adopted in Maine, in the case of *Emmons* v. *Bradley,* 56 *Me.* 333, and in Vermont, in the case of *Smith* v. *Onion,* 19 *Vt.* 427. Other cases for and against this view are cited by Mr. Wait in his work on *Fraudulent Conveyances,* § 238, who gives the view now expressed his approval as being in accord with the weight of authority and with reason.

This view also appears to be in line with what, I think, has been the general understanding of the courts of this state, in respect of the effect of the retention of possession by a vendor.

This, like a secret trust, was considered one of the badges of fraud, in Twynne's Case. But not only is the rule very generally settled elsewhere that it is explainable (see *Oriental Bank* v. *Hoskins, supra,* and cases cited), but such had been the views expressed in the Supreme Court and Court of Chancery in this state. *Hall* v. *Snowhill,* 2 *Green* 8; *Miller* ads. *Pancoast,* 5 *Dutcher* 250; *Runyon* v. *Groshon,* 1 *Beas.* 86.

Indeed, it is impossible for me to conceive how the point now under discussion can be regarded as an open question in this court, since the decision of the case of *Terhune* v. *Demarest,* 3 *C. E. Gr.* 532. The facts in that case were, that one G. Terhune and his wife made an absolute conveyance of land to one A. G. Terhune, and the consideration named in the deed was $3,000. A creditor of G. Terhune filed a bill to set aside this deed as voluntary and made to hinder and defraud creditors. This court held that it was, in a degree, voluntary, and, as against creditors, could not be sustained as a deed. But there was parol testimony introduced to show the character of the consideration and the circumstances which surrounded the execution of the deed. In summing up the result of this parol testimony, the learned Chief Justice remarked: "From this series of facts, it seems to me to be plainly consistent with sound reason and good sense to infer that the debtor executed the conveyance in question to his principal creditor with an understanding, if not clearly expressed, at least tacit, that the latter should sell the property and thus indemnify himself for the moneys due him."

The decree was, that the amount which was actually due from the grantor to the grantee be declared a lien upon the property; that the property should be sold, and after the payment of this amount, with interest and the costs of the suit, the surplus should be paid upon the judgment of the attacking creditor.

So, here was a writing purporting to be an absolute deed, but accompanied by a verbal understanding which changed its entire character, but which deed, in the absence of a fraudulent intent, was held valid as a mortgage against creditors.

I conclude that the bill of sale now under consideration ·was not, upon the ground now laid, void *per se.*

There is a second ground upon which, under the statute 13 Elizabeth, the invalidity of this transfer is asserted. This ·ground is not that of a secret trust existing, but it is, that any reservation of an interest, openly or secretly, by an insolvent debtor, who assigns property to a trustee for the payment of selected creditors, is void. This insistance is rested upon the :authority of a line of cases nearly all confined to the courts ·of the State of New York. *Goodrich* v. *Downs,* 6 *Hill* 438 ; *Strong* v. *Skinner,* 4 *Barb.* 546 ; *Lansing* v. *Woodsworth,* 1 *Sandf. Ch.* 43 ; *Barney* v. *Griffin,* 2 *N. Y.* 365 ; *Collomb* ·v. *Caldwell,* 16 *Id.* 484.

The rule which is supposed to control this case had its first ·expression in *Goodrich* v. *Downs, supra,* decided by the New York Supreme Court. The contest in that case was between ·one, who, at a sale, made on an execution against Goodrich, ·had bought some wood, and a person to whom Goodrich had, before the levy of the execution, made an assignment of the ·wood.

The facts were, that Goodrich, being insolvent, had assigned ·the wood, together with nearly all his other property, to his ·son, in trust, to sell and convert the same into money and apply the proceeds to the payment of four of his creditors. The assignment provided that if any surplus remained after ·paying the specified debts it should be paid over to Goodrich, ·the assignor. The trial judge held that the assignment was ·void and non-suited the plaintiff, who was the assignee.

Judge Bronson, in the Supreme Court, held that the clause ·directing that the surplus, if any, after paying the four cred-itors, should be returned to the assignor, was a trust for the ·use of the assignor. The judge also held that the non-suit was right, because there was no question to leave to the jury.

But it is important to remark the ground upon which the ·conclusive character of the fraud was placed. The judge admitted that if the question presented had been whether the assignment violated that section of the statute 13 Elizabeth,

which declares void every conveyance made with intent to hinder and delay creditors, the case would have been one for a jury, under the decisions of the New York Court of Errors.

But the judge put the conclusiveness of the fraud upon the words of another section of the statute of frauds. It is that section, re-enacted in the State of New York, and appearing also in our revision as section 11 of our Frauds and Perjury act. It provides that all conveyances of goods, chattels, &c., made in trust for the use of the person making the same, shall be void, &c. The judge held that under this section actual intent cut no figure, and that the presence of the reservation of a right to receive any surplus was a trust, and *ipso facto* the deed was void.

Five years later the same judge delivered the opinion of the Court of Appeals in the case of *Barney* v. *Griffin*, 2 *N. Y.* 365. The facts were, that a conveyance of real estate to three persons was made upon trusts to pay certain creditors in different ways, and, finally, to convey so much of the real estate as should be left. Upon the authority of the preceding case, it was held a void transaction, regardless of the fact that there might be no surplus to return.

The ground upon which these cases were decided was overruled in the case of *Curtis* v. *Leavitt*, 15 *N. Y.* 9, 124.

In that case a corporation had made a deed of trust conveying certain bonds and mortgages to trustees to secure certain debts of the company, existing as bonds, which the company had issued.

In the deed there was expressed a trust. The trustees were to repay such surplus money and restore such securities as might remain after the final payment of the bonds. This deed was held to be a legal instrument. The court repudiated the doctrine laid down in Goodrich *v.* Down, that every reservation of a surplus was a trust for the use of the assignor. *Opinion of Comstock, J.,* 114 *et seq.*

It is true that the same court, in the subsequent case of *Collomb* v. *Caldwell*, 16 *N. Y.* 485, followed Barney *v.* Griffin in a case involving exactly identical facts. The court

could not have done otherwise without overruling a case in the same court.

But the court was driven to new ground for a rule of decision. They held that the reservation of a surplus was conclusive proof of actual fraud.

Now, whether such a reservation, when there is a surplus, is fraudulent, is not now the question. It is not fraudulent if the subject matter of the assignment is of equitable cognizance only. For in that case nothing would be put beyond the reach of a common law execution which had before been within its reach. *Leitch* v. *Hollister*, 4 *N. Y.* 211.

This question is not important, for the weakness of the doctrine thus adopted in Collomb *v.* Caldwell lies in the rule of evidence laid down respecting the effect to be given to the reservation of a surplus.

Under this rule it would not matter if it was demonstrated that no surplus could exist, or that the parties had no notion that it would exist. The answer is, you reserved it.

In my judgment, the rule is an arbitrary one, for I cannot conceive why the assignment of a person who happens to include in it a customary reservation of a surplus, when in fact the value of the property transferred is less than the amount of debts, should be held to be constructively fraudulent.

Chancellor Walworth announced no such doctrine in *Beck* v. *Burdett*, 1 *Paige* 305. He held, that inasmuch as it was doubtful whether the property assigned was sufficient to pay the debts, a mere hypothetical reservation of the surplus would not vitiate the assignment.

The Supreme Court of Pennsylvania, in *Rahn* v. *McElrath*, 6 *Watts.* 151, took the view of Chancellor Walworth. The court say that the proper limitation upon the right to assign property to preferred creditors is, that the amount assigned bear a reasonable proportion to the debt provided for, a defect in which would be evidence of fraud in fact, which, however, is not the subject of legal direction.

In *Dana* v. *The Bank of the United States*, 3 *Watts & S.*

223, 250, where there was an equity of redemption and a reservation of surplus, as in the present case, the deed of assignment for preferred creditors was held legal. The same result was reached in the case of *Phillips* v. *Improvement Co.*, 25 *Penna. St.* 56, where a surplus was reserved.

In the case of *Floyd & Co.* v. *Smith*, 9 *Ohio St.* 546, the court referred to, and expressly disapproved of, the rule laid down in *Goodrich* v. *Downs, supra*, and *Barney* v. *Griffin, supra*, and hold that the reservation of a surplus, after paying certain debts, by a person contemplating insolvency, is not a conclusive badge of fraud.

In *Ely* v. *Hair et al.*, 16 *B. Monr.* 230, the facts in which case presented the very question decided in the two New York cases, there is a discussion of the rule in them promulgated, and these cases are disapproved.

In *Richards et al.* v. *Levin*, 16 *Mo.* 596, the decision is stated to be, that where a debtor in insolvent circumstances assigns all his property for the benefit of certain preferred creditors, directing the surplus, if any, to be paid to the grantor, this does not make the deed fraudulent, where it is admitted that the whole property is insufficient to pay even the preferred debts.

In *Miller* v. *Stetson & Co.*, 32 *Ala.* 161, the case of Goodrich *v.* Downs was under discussion and the court refused to recognize it. The court held that the reservation of a surplus in that case was not fraudulent.

Involving substantially the same question is the case of *Andrews* v. *Ludlow*, 5 *Pick.* 28, where there was an assignment by an insolvent debtor of property to such of his creditors as should, within a certain time, become parties to the assignment, with a reservation to the assignor of the dividends that would have gone to such creditors as failed to come in. Here, in a different form, was the same trust that was held to be so calculated to baffle creditors, in Goodrich *v.* Downs, as to be conclusively fraudulent. The court said that the agreement to pay over the surplus could have no effect, because the debts greatly exceeded the value of the property. Other

cases are cited in *note* 2 to *section* 207 of *Burrill on Assignments* (*3d ed.*)

In the present case, the property subject to execution was less in value than the amount of the debts. There is no evidence that the accounts had any value. There is no proof, therefore, that any property was put beyond the reach of creditors fraudulently.

But a conclusive answer to this point of attack is, that the transfer was a mortgage. As soon as that is admitted, then, by reason of the equity of redemption remaining in the assignor, which is subject to a common law execution, the surplus is put within reach of an execution creditor without resorting to equity. *Leitch* v. *Hollister*, 4 *N. Y.* 211.

In regard to the objection raised that there was no consideration for the assignment, little need be said. The point could only have substance when the transfer was regarded as an absolute bill of sale. Viewing it either as a mortgage or a trust, all question in respect to the consideration disappears, as the debts intended to be secured were admittedly existing.

I think the judgment ordered by the Circuit Court should be affirmed.

BEASLEY, CHIEF JUSTICE (dissenting). This controversy respects the legal effect of a voluntary assignment by an insolvent debtor in favor of certain of his creditors.

For immediate purposes it will be sufficient to state that the transaction giving rise to the litigation was this : The debtor in question was insolvent, and he assigned to one Alonzo Somerville, who was not a creditor, all his property, with the exception of his wearing apparel, such property consisting of certain chattels of the admitted value of $1,000, and the moneys due upon his books of account, the value of such accounts not being shown. His debts were about $2,400. The transfer to Somerville was for the following purpose : that he "should sell the goods and chattels at public or private sale for the best price that he could realize and divide the proceeds, *pro rata*, among" certain designated creditors, whose

claims in the aggregate amounted to about one-half of the debts due from the debtor, " and that he would pay the overplus, if any," to the said debtor, the latter having reserved to himself the right to redeem the goods at any time before sale. There was no disposition whatever made of the moneys that might be collected on the books of account mentioned in the assignment.

The chattels thus enumerated were subsequently seized under an execution in favor of the plaintiff in error, and in the Circuit Court it was held that the assignment above described was legal and paramount to such process, and that opinion has now been affirmed by this court.

To that view I cannot agree, as it seems to me that the transfer thus validated is void *per se*, for two reasons—*first*, because it is inconsistent with the act of this state regulating the assignments of debtors for the benefit of their creditors; and, *second*, because it is made void by the twelfth section of the act for the prevention of frauds and perjuries.

In considering the first head of this division of the subject, nothing will be said with respect to certain peculiar characteristics of the transaction that will, in the sequel, become the subject of criticism; for my first contention will be, that such a transfer of property as this is, from its general nature, without reference to its particular qualities in this instance, utterly illegal and inefficacious, so far as respects dissenting creditors.

This debtor was desirous of preferring certain of his creditors, and to that end he executed the assignment now before us. That he could have effectuated such purpose by means of a judgment, or a mortgage, or by a direct transfer of property to favored creditors respectively in satisfaction of their claims, no one will dispute. There is a long train of adjudications in this state and elsewhere to that effect, to which it would be idle to refer, for the subject is not open to debate. Certainly the doctrine is not now, in any degree whatever, called in question, and therefore it does not enter in anywise into this discussion, for the theorem that I shall endeavor to prove is, that an insolvent debtor is forbidden by the statute

of this state to create a preference in favor of one or more creditors through the instrumentality of *a trust.* In the absence of statutory prohibition, no one would gainsay the right of the creditor to obtain a preference by this method. Many cases can be found in the books maintaining such a doctrine; but with us the question is one relating exclusively to the meaning of our own written law. That law is declared in these words : " That every conveyance or assignment made by a debtor or debtors, of his, her or their estate, real or personal, or both, *in trust* to the assignee or assignees, for the creditors of such debtor or debtors, *shall* be made for their equal benefit in proportion to their several demands to the net amount that shall come to the hands of said assignee or assignees for distribution, and all preferences of one creditor over the other, or whereby any one shall be first paid or have a greater proportion in respect of his, her or their claim than another, shall be deemed fraudulent and void," &c.

This statutory provision appears to me so precisely applicable to the transaction under consideration, that it does not need, and perhaps does not admit of, elucidation. Assuredly we have in hand an assignment of a debtor of all his property, except his wearing apparel, for certain creditors in exclusion of others, and just as assuredly such assignment is made by way of a trust. That the present disposition is a trust is assumed as unquestionable ; for this transfer is to a third person having no interest, the title being thus vested in the confidence that he will apply the property for the benefit of certain specified creditors ; the only remedy for the breach of the duty thus imposed being by a subpœna in chancery ; so that this is not only a trust, but, in all its characteristics, a typical one.

Unavoidably, therefore, this case is presented to my mind as standing in this attitude : the statute in explicit terms declares that all preferences created by a debtor through the medium of a trust shall be deemed fraudulent and void, and this court now, just as explicitly, declares that such preferences so created shall be deemed honest and valid.

I have most certainly looked, with what seems to me ex--haustive care, through this case, to discover some possible ground by force of which this seemingly irreconcilable opposition can be, if not fully explained, at least in some degree accounted for, and I am obliged to confess that I have altogether failed in the endeavor.

The only attempt that has been made to show, by argument, that the statute in question does not dominate the facts before us, is to be found in the brief of the counsel of the defendant in error.   The reasons there given in this behalf are, in substance, these : that the assignment here used does not purport to be an assignment for the benefit of creditors; that it does not purport to convey all the debtor's estate; it does not purport to be in trust for creditors, and that no preferences appear on the face of the paper.

It will appear in the sequel that the transfer thus characterized was by a simple bill of sale, no trust being declared in the instrument.   But as it was shown that the assignee had given nothing whatever for the property so passed to him, and as such a title could not have stood an instant against the execution that was levied, the learned counsel himself, in behalf of his clients, these preferred creditors, proved that this naked bill of sale had been accompanied, and as a part of the transaction, by a parol declaration of trust in favor of his clients, and in this connection he further showed that the debtor had vested in the trustee the title to everything that he owned or had a right to, except his wearing apparel.

We, therefore, very obviously, have this posture of things : if we confine our view to the bill of sale alone, as counsel seems to imply that we ought to do, then, in that event, we have presented to us a transfer of a debtor's property, without consideration, to a third party, to the detriment of a judgment creditor—a transaction which, with respect to these litigants, would be devoid of the least spark of legality; while, on the other hand, if we construe the bill of sale, as plainly we must, in its connection and co-operation with the parol declaration of trust we have an assignment that expressly negatives every

one of the facts stated by counsel as the basis of his argument; for such assignment does purport to be for the benefit of creditors, and to convey all the debtor's estate, and to be in trust for creditors and to create preferences.

The only remaining reason urged in the brief referred to in support of this transfer of property is, that the statute under consideration, in its application to an assignment creating preferences, does not avoid the transfer itself, but merely vacates the preferences so given. But this contention is opposed by all our adjudications. The following cases plainly maintain that if a preference be created in one of these assignments, not only such preference, but the entire affair is avoided. *Varnum* v. *Camp*, 1 *Green* 329; *Garretson* v. *Brown*, 2 *Dutcher* 425; *Fairchild* v. *Hunt*, 1 *McCart.* 371.

But this consideration, whatever it may be worth, is out of place in this connection, for, in the present instance, the entire purpose of the assignment is to create these preferences; it has no other force or effect; it does not give the least right or interest to the creditors at large; and if, therefore, this preferred class cannot claim under the trust, the debtor himself will be its sole *cestui que trust.*

Such considerations as the foregoing do not weigh, in the least degree, with me, and I have referred to them simply because they are the only reasons that have been urged, so far as I can recall, for the exception of this assignment from the operation of the act under discussion.

Nor have I been able to perceive any consideration, founded in public policy or the nature of the subject, that would induce a court to thus circumscribe the force of this statute. There is no necessity for giving to creditors the power to secure their preferences by the creation of trusts. They can effect the same purpose just as effectually by means of a mortgage or judgment, and such devices have, from time immemorial, been resorted to in these cases. For over fifty years the course of legal practice on this subject has been familiar to me, and not a single instance has ever come to my notice of an attempt to put a creditor on a vantage ground through

the medium of a trust, and it seems highly probable that the case now before the court presents the first endeavor of this kind that has ever occurred in this state.   But the proceeding is not only a novelty, but will be introductive of much mischief, for as an instrument of fraud it is of unequaled efficacy.

The disadvantage to which it will put the unpreferred creditor will be obviously great; for after he shall have obtained his judgment, instead of being able to levy his execution on the property of his debtor subject to the preferred creditor's judgment or mortgage, as the case may be, he will be obliged to file a bill in equity to reach a similar end.   In other respects his position will be one of hardship; the trustee, the agent of the debtor and the preferred creditor, will have the entire possession of the property, and he will sell it at his discretion without notice to the unpreferred creditor.   The disastrous effect of such a disposition of the property upon the right of the creditor at large is plainly manifest, when it is compared with a sale made under a judgment or mortgage by a public officer.   In general, preferences to creditors by an insolvent debtor are unjust, and are not to be favored, but when they are enforced by the instrumentality of a trust, they become oppressive in the extreme.

Neither do I think that this method, that seems to me of this evil tendency, has any support in any judicial utterance in this state.   So far as has been observed, all the indications of. such opinion are in the opposite direction.   Over sixty years ago the subject was before the Supreme Court in the case of *Tillou* v. *Britton*, 4 *Halst.* 121, the question being, whether a debtor in failing circumstances could transfer to a particular creditor in payment of his claim a single item of property. The court, in sustaining that transaction, declared, " that the act to secure creditors an equal and just division of the estate of debtors who convey to assignees for the benefit of creditors," does not extend to a solitary transfer of an individual item of property to a creditor in payment of a debt, and the operation of the act must be confined, if not to cases where a

trust is created, at least to cases where there is something like universality in the assignment.

In the instance now in hand there are both a trust and universality in the assignment, so that it would seem unreasonable to doubt, in the light of the judicial view thus expressed, that such a transaction would have been condemned by the court at the time the reported case was in agitation. Nothing can be more significant of the wide scope this act was then supposed to possess than the fact that in this case it was insisted by some of the ablest counsel of the state, the late Mr. George Wood being one of them, that it prohibited a transfer by a failing debtor of a single article of his property directly to a particular creditor in payment of a debt due to him.

To the same effect, in *Owen* v. *Arvis*, 2 *Dutcher* 34, Chief Justice Green very plainly expresses the opinion that, in this class of cases, whenever the assignment is *in trust*, the case falls within the very terms of the act. And in *Emerick* v. *Harlan*, 1 *Beas.* 230, we are afforded a very clear insight into the views entertained by Chancellor Williamson on this subject. In the case cited the assignment was deemed an involuntary one, and, on that account, was not affected by the regulation in question, but with respect to the proper effect to be ascribed to the act itself, the Chancellor very plainly expresses his judgment. He says: "From several cases that have been in this court lately, I am perfectly satisfied, if a debtor is permitted to assign the whole or any part of his property *in trust to a third person*, for the benefit of the whole or part of his creditors, in any other manner than the act prescribes, the beneficial purposes of that act will be completely annulled. There are great frauds practiced under the shelter of assignments. The Assignment act is a great protection to creditors, and courts should be very strict in discountenancing assignments made in any other manner."

It will be observed, therefore, that inasmuch as this court in the present case has sustained an assignment by a debtor of his property in trust to a third person, for the benefit of

some of his creditors in exclusion of others, in a manner different from that prescribed by the act, such judicial action, in the opinion of the very distinguished Chancellor, will have the effect of completely annulling the beneficial purposes of the act. In view of the preceding discussion, it is scarcely necessary for me to say that the opinion thus expressed necessarily has my entire concurrence.

In this connection it is proper to say that it has not been observed that there is even so much as a *dictum* in our reports, that lends the least countenance to the proposition, that a debtor in failing circumstances can transfer his property to a trustee in order to confer a preference on one or more of his creditors.

Before leaving this branch of my subject I would further remark, that I have entirely failed even to conjecture what spark of vitality will hereafter be discovered to exist in the statute under discussion. If a debtor, as in this case, can lawfully transfer his entire property in trust for the sole purpose of creating preferences, in what possible juncture is he to be prohibited from so doing? Most assuredly, it will hardly be said that he is so prohibited only when his act is done with a fraudulent design; for such an assumption would operate at once as an interpolation of the statute, and as an abrogation of it, for the statute says that all preferences created in this mode shall be "deemed fraudulent and void," and this is the direct opposite of saying they shall be void only when fraudulent. And so, if they are in fact fraudulent, they are void at common law, and the statute is not needed to make them so. In my apprehension nothing is, or can be, more demonstrably certain than the fact, that it was the legislative design to prohibit, in the most absolute form, the giving of preferences in assignments of this nature, and that without the least respect to the consideration whether the intention leading to such favoritism was good or bad. This statute is not aimed at frauds; its title expresses its purpose very clearly in these words, viz.: "An act to secure to creditors an equal and just division of the estates of debtors who convey

to assignees for the benefit of creditors." And in conformity to the purpose thus stated, the first section declares that " every assignment" in trust for creditors "shall be made for their equal benefit in proportion to their several demands," "and that all preferences of one creditor over the other, &c., shall be deemed fraudulent and void."

In the presence of such clear statutory language as this, it is not surprising that our courts, up to the present time, have uniformly held that an assignment of this kind is absolutely void if any of its essential provisions be inconsistent with the directions of the act, and this without regard to the moral nature of the transaction. Thus the first resolution declared by the court in *Garretson* v. *Brown*, 2 *Dutcher* 437, is in these words, viz.: "That if a deed of assignment contains upon its face a preference or preferences of one creditor over another (except as hereinafter mentioned), the deed itself is void and inoperative, as being in contravention of the statute; and the preferences, of course, fall with the deed."

It would seem that the proposition cannot be more clearly stated : the preference *per se* vitiates the assignment, no matter whether the purpose of the maker of it be fair or fraudulent.

Equally explicit and to the purpose are the expressions of the bench upon this subject in *Varnum* v. *Camp*, 1 *Green* 326, 329, the language of the opinion being this : " It follows, then, that were an assignment not made for the equal benefit of the creditors, but whereby a preference is sought to be given to any one not a creditor, by mortgage or judgment, over another, is, in contemplation of law, fraudulent and void. However clear, then, it may be of moral turpitude, or actual fraud, it can no more, than if thus tainted, prevail against an execution creditor." And in *Knight* v. *Parker*, 1 *Beas.* 219, the Chancellor, criticising one of these trusts, says: " Whether the debtor executed it with a fraudulent intent or not, it is in violation of the rights of creditors. It delays them in the collection of their debts, and must be regarded, in equity, as a legal fraud, and as such declared void as against them."

It is not too much to say, that, until the present occasion,. the language of this act on this subject has never been considered to be open to any doubt whatever,·and that every judge in every court to whom it has been presented for construction has held that it avoids, *proprio vigore,* and irrespectively of extrinsic circumstances, every trust of this kind that creates. preferences. These views, as I understand the inevitable effect of the decision made in the present case, are now re-- jected by this court, and hereafter assignments may be made in trust with preferences for particular creditors. That result. raises the question, what hereafter will be the force of the statutory prohibition in question, and to what situation is it to be applied?

That inquiry must be elucidated by somebody else; for my part, I shall be compelled to wait for instruction on the subject.

The second head of the discussion relates to the particular form in which the present assignment was cast. That form. was this: by a bill of sale, under hand and seal, the debtor put in this man, Alonzo Somerville, the title to all his property, consisting of goods, chattels and his books of account. This instrument is strictly formal, and purports to sell the property described. for the sum of $1,050.38, and for which consideration a receipt is expressed in the paper. Somerville is not described as trustee, nor is there the faintest allusion to the existence of any trust. As the instrument reads, Somerville stands as the absolute owner of the property on which it. operates, and as having paid full and fair consideration for it,. even to the last penny. The creditors who are interested in upholding the transaction themselves showed, by their testimony, that the statements of this bill of sale were untrue in. every important respect; that Somerville was not a purchaser,. that he had not paid any part of the sum for which a receipt was given, that he was a mere trustee, that he was to convert. the chattels into cash and distribute it *pro rata* among the preferred creditors, and that no trust was declared touching·

the accounts, and therefore the moneys arising therefrom would belong to the debtor himself.

The question therefore is presented, whether an assignment in favor of specified creditors can be made of the property of the insolvent debtor by means of an absolute bill of sale, accompanied by a parol declaration of trust to which no allusion is made in the written instrument, and with the statements of which it is inconsistent?

My conclusion is, that such a disposition of property is absolutely void, as opposed to the spirit of the statutory provision already considered, and to the ordinary principles of jurisprudence. Why should the debtor when he makes one of these assignments be permitted to give to the transaction a false semblance? The creditors certainly have the right to know what has become of his property, and it seems altogether intolerable that he can hold before them a bill of sale that falsely states that he has made an absolute sale of everything possessed by him for a full consideration which has been paid to him. It is obvious how admirably such a device is adapted to the purposes of the fraud-doer, and it is equally evident that it can subserve no other interest.

Such proceedings appear to have been universally condemned whenever judicial attention has been called to them. The inevitable effect of bills of sale of this character is to mislead and embarrass creditors, and those who use them are therefore chargeable with a design to effect such result; and it is on this account that, so far as has been observed, these secret reservations or limitations in absolute bills of sale have been pronounced against. In *McCulloch* v. *Hutchinson*, 7 *Watts* 434, the transaction involved a preference given to a creditor by force of an absolute bill of sale, modified by a parol trust. With respect to this latter feature of the affair, this is the judicial expression, viz.: "It is the secrecy of this trust, a trust incompatible with that which appears on the face of this transaction, that constitutes its illegality. When the trust openly constitutes a part of a verbal assignment, or is apparent on the face of a written instrument, no harm is done.

The creditor is informed of the nature of the conveyance and of the destination of the property, so that he can, with full information, avail himself of his legal remedies for a resort to that surplus.  *  *  *  A preference may be given by a debtor, though insolvent, to an honest creditor. A sale may be made by such debtor at a specified price. But honesty and fair dealing require that the truth of the transaction should concur with its appearances," &c.

Very much in the same strain is the stricture of the court of Missouri (Smith v. Lowell, 6 Mo. 67) upon an attempt to dispose of property by this method. The court said : " The law does not permit debts to be secured in this manner. If the conveyance was intended only to secure the debt, that intent should have appeared in some writing made at the time. If courts should give the least countenance to the securing of debts by absolute conveyance alone, there would be no end to the embarrassments in which creditors would be involved to secure their debts."

And, again, in Curtis v. Leavitt, 15 N. Y. 120, it is said: "Secret trusts attending conveyances absolute in terms have always been regarded as a badge of fraud since the celebrated Case of Twynne." See, also, Burrill (3d ed.), § 209 ; 1 Am. Lead. Cas. 71.

Not a single reason presents itself to my mind in favor of sustaining a proceeding of this kind. It would seem the dictate of common justice and public policy to require the debtor to declare in the instrument executed by him the whole of the disposition made of his effects. If he be acting honestly, he can have no motive for withholding such disclosure; if he be acting dishonestly, nothing can be more serviceable to his fraud than the absence of the trust from the written document. Such omission leaves the unpreferred creditor in utter darkness. How is he to discover what the trust in reality is, or who are its beneficiaries? His only remedy would seem to be a bill in chancery. To say to such creditor that he can set aside such a transaction as this when he shall have proved it to be tainted with fraud, is, in substance, in most cases, to inform

him that he has no available remedy. How can he prove a fraud with such a slender chance for investigation? He looks at the bill of sale, and it informs him that he has no further interest in the debtor's estate; he finds himself face to face with a *bona fide* purchaser who has paid full value for the property. In the present case the consideration that is receipted is minutely described as being so many dollars and so many cents. Why should the creditor, unless he has special information, look beyond such an instrument as this? Why should he suppose that a secret trust exists as a pendant to the instrument of sale? And if he does imagine the existence of such a trust, how is he to ascertain its dispositions? It seems to me manifest that an assignment constituted by an absolute bill of sale, attended by a parol trust, in the nature of things, and without reference to the intention of the debtor, must be a hinderance to the unpreferred creditors in the legal pursuit of their claims. To say the very least in disparagement of such dispositions, they certainly put the transaction out of sight, and have all the ill effect of purposed concealment. As this is the natural effect of the contrivance resorted to by the debtor and the preferred creditors, they are to be charged with the purpose to produce such effect and consequently, such a transfer is void by force of the act relating to frauds and perjuries.

It is further to be noted, that this assignment which is here validated has certain other qualities which, of themselves, would have led me to repudiate it on legal grounds.

It is the common language of the authorities, that any substantial use or benefit reserved or provided for in the assignment for the benefit of the assignor himself renders it void. The assignment in the present instance contains three provisions of this nature—*first*, the overplus, if any, of moneys arising from the sale of the goods and chattels, after the payment of the specified debts, is to be paid to the assignor; *second*, that he may redeem the said goods and chattels at any time before the sale and disposal thereof; and, in the *third* place, all the moneys then due, or to grow due, to himself or

to a firm of which he had lately been a member were transferred to the assignee, and no trust was declared with respect to them.

With reference to the reservation of the surplus after the payment of the designated claims, it is not necessary to pause, for the question is a debatable one, and has been variously decided, and is one of very minor importance in the present discussion.

But the second right reserved is of a more material character—it is the right to redeem the goods before sale. Such a power of reclamation should not be permitted, as it can readily be used to the oppression of such of the creditors as are unpreferred. If the debtor be entitled to redeem, he can, without prejudice to himself, divest himself of the title to his property, and thus wrong and hinder creditors at large during the interim between thus putting the ownership in the assignee and the debtor's redemption of his goods or land, and such interval of time may in some cases be of considerable length. " The effect of a valid assignment," says a book of deserved repute, " is to vest the assigned estate in the assignee, so as to put it out of the reach    *    *    *    even of the assignor himself." 1 *Am. & Eng. Encyc.*, p. 871.

In my opinion, and in view of the authorities, this assignment, if otherwise unobjectionable, should not receive the sanction of the court by reason of this right of redemption being reserved to the debtor.

And so the third of the benefits reserved in the trust would lead me to a similar result. This debtor divested himself of the title to these moneys due on the books of account, and made no further disposition of them ; the consequence being that the assignment, with respect to part of the property, is for the benefit of the preferred creditors, and with regard to the other part of it, is for his own benefit. No principle in this branch of the law seems to be more universally recognized than the rule, that if the debtor reserves in the assignment made by him any substantial interest or advantage, the entire transaction becomes *ipso facto* void. Numerous de-

cisions attest that doctrine. It is not alone the objectionable feature in the disposition of the property that is annulled, but the entire assignment itself. The reason of the rule is, that to permit such a practice would embarrass creditors by enabling debtors to conceal their property, and that to avoid such trusts only so far as such vicious reservations were concerned, would rather encourage than repress the evil. In every case in which a forbidden ingredient of this kind has been discovered, the judicial action has been to declare the whole assignment a nullity.

The foregoing are the principal considerations that have led me to vote to reverse the present judgment.

It will be observed that my conclusion is founded on reasons that may be thus summarized:

*First.* I cannot agree that a failing debtor can assign his property in trust by way of preference to certain enumerated creditors. Such a construction of the act seems to me to be opposed to its language, its spirit and its purpose, and, also, to all former judicial expressions of opinion.

*Second.* I cannot agree to the doctrine that such an assignment can be made, in part, by a written bill of sale, and in part by a parol disposition that contradicts the written instrument in essential particulars.

*Third.* Nor that the debtor, in such an assignment, can reserve the right to revoke his transfer on any condition whatever.

*Fourth.* And lastly, that such an assignment cannot put property in trust for creditors and other property in trust for the debtor himself.

I vote to reverse this judgment.

*For affirmance*—DIXON, GARRISON, MAGIE, REED, CLEMENT, SMITH, WHITAKER. 7.

*For reversal*—THE CHANCELLOR, CHIEF JUSTICE, SCUDDER, VAN SYCKEL, BROWN. 5.