RICHARD B. STITES et al,

v.

CHAMPION, RISLEY et al.

A debtor, in failing circumstances, executed to a favored creditor a deed of
conveyance of all his landed property, a bill of sale of all his personal prop-
erty, and an assignment of all his choses in action, taking from the creditor a
declaration in writing that he held the property for the purpose of paying the
amount due himself and the remainder for the benefit of the other creditors of
the grantor.—*Held,* (1) That the transaction amounted to an assignment for
the benefit of creditors, and was void because it created a preference.   (2) That
the case of *Muchmore* v. *Budd, 24 Vr. 369,* does not apply.

On order to show cause why an injunction should not issue.
Heard on bill and affidavits, and answers and affidavits.

*Mr. Schuyler C. Woodhull* and *Mr. Samuel W. Beldon,* for the
complainants.

*Mr. Allen B. Endicott* and *Mr. David J. Pancoast,* for the
defendants.

PITNEY, V. C.

This is a bill in the nature of a creditor's bill.   It is founded
on a judgment recovered by the complainants against the defend-

Stites *v.* Champion.

-ant Champion, on the 19th of August, 1891, and it attacks a ·conveyance of lands and a transfer of personal property made by Champion to Risley, on the 10th of August, 1891, by which the judgment debtor conveyed to Risley certain lands in Cape May ·county, and also conveyed to him, by bill of sale, certain goods .and chattels, and also assigned to him all his book accounts and ·choses in action. The bill alleges that those transfers were made without consideration, and prays that they may be set aside and ·declared to be void as against the complainants.

The defendants, Champion and Risley, answer separately, but the answer of each is an echo of that of the other, and sets out that Champion, being indebted to Risley in several thousand ·dollars, and being also indebted to other creditors, and the business enterprise in which he had been engaged having proved a failure, and finding himself unable to successfully conduct his business, conveyed to Risley, who was his largest creditor, the lands and chattels, and assigned to him the book accounts of ·said Champion

·" in trust to manage, control, sell or dispose of the same, and from the proceeds ·thereof this defendant [Risley] was to reimburse himself the amount of the indebtedness of said Champion to him, and in further trust, but after this defendant should be repaid such indebtedness, all other and further moneys realized from said property or from the sale thereof should be applied to the ·payment of Frank E. Champion's debts due his other creditors,"

·and that, in pursuance of said agreement, Risley did, at the same time such conveyance was made by Champion, make and execute .a declaration of trust in writing, which is set forth in these words :

"To all persons to whom these presents shall come.

"I, Nathaniel Risley, of Pleasantville, of the County of Atlantic and State of New Jersey send· greeting:

·  "Whereas by indenture of Deed bearing even date herewith and by two separate Bills of Sale, bearing even date herewith, Frank E. Champion has ·conveyed to me his real estate and personal property situate in Ocean City, County of Cape May, in the State of New Jersey *and elsewhere.*

"Know ye, that I the said Nathaniel Risley do hereby acknowledge and declare, that the said lands and houses, goods and chattels are conveyed to me in trust; first, to manage, control, sell or dispose of the same and from the pro· ·ceeds thereof reimburse myself the amount of said Champion's indebtedness to me, being about $6,500, and in trust further, that after I shall receive the said

sum of $6,500 such other or further sums as I receive from said property, shall
be applied to liquidate or reduce the indebtedness of Frank E. Champion to.
his other creditors.

"In witness whereof I have hereunto set my hand and seal this tenth day
of August, in the year of our Lord, one thousand eight hundred and ninety-
one.

                                    "NATHANIEL RISLEY. [SEAL.]"

The original deed of the conveyance of the land and the assign-
ment of the personal property and chattels were not produced;.
nor their contents set forth, except as hereinbefore stated, but it
appears by this declaration of trust, which is set forth in full,.
that those transfers must have included all of his property, both.
real and personal, not only in Ocean City, but elsewhere.

The first question to be determined is, What is the true char-
acter of these conveyances?   Being made at one time and upon
a single consideration and for a single purpose, they, together·
with the declaration of trust, must be treated, for the purposes.
of construction, precisely as if all had been included in one·
writing.

It seems clear enough that, thus considered, they constitute
something more than, and far different from, a mortgage, as dis-
tinguished from an assignment in trust for the benefit of credit-
ors, when subjected to the criterion established by the prevailing.
opinion in *Muchmore* v. *Budd, 24 Vr. 369.*   No right of redemp-
tion or to the surplus moneys is expressly reserved to the
grantor.   He has entirely divested himself of all interest in the·
subject-matter.   It is true that a trust will result to himself for
any proceeds of the trust property that may remain after paying·
his debts in full, but that results in the very nature of the case
in all assignments for creditors.   At the same time it is to be
observed that the writings are plainly framed on the idea that
the trust property is insufficient to pay all creditors in full, and
that the grantor is insolvent.

Speaking of the bill of sale in *Muchmore* v. *Budd, 24 Vr.*.
*385,* the learned judge says:

"The parol agreement reserved the right to redeem.   A new·
debt was practically created at the time by the assumption by
the corporation to pay the price of the goods delivered by Much-

more.  If the company had attempted to hold the goods as absolute owners by virtue of the bill of sale, a court of equity would have transformed it into a security.  Had the amount of the advances and debts been tendered to Somerville before he sold, no one would doubt for a moment that he would have been compelled to return the property.  Unless it was intended as security there existed no right to redeem, and, therefore, the reservation of that right manifests the intention of the parties to so regard it.  If it was for security, then it was a chattel mortgage."

And again (on *p. 386*) :

" The distinction between a mortgage and an assignment exists principally in the interest which the mortgagor retains in the property, namely, his equity of redemption.  This can be levied upon under a common law execution, and a judgment creditor or a purchaser can protect his rights by redemption or any other act of which the mortgagor was capable.  An assignment is intended as a payment and a mortgage as security.  Incidentally, there is a power of sale under the latter, and there may be said to be security in the former, but the primary objects are as stated."

" The equity of redemption in the one and the want of it in the other, is their distinguishing feature of difference."  *Burrill Ass.* §§ *6, 7.*

Mr. Burrill, section 6 of his book on Assignments, says :

"An assignment is more than a security for the payment of debts; it is an absolute appropriation of property to their payment.  It does not create a lien in favor of creditors upon property which in equity is still regarded as the assignor's, but it passes both the legal and the equitable title to the property absolutely beyond the control of the assignor.  There remains, therefore, no equity of redemption in the property, and the trust which results to the assignor in the unemployed balance does not indicate such an equity."

No further citation of authority is necessary to show that the transaction in the present case was in no sense a mortgage.

If these writings do not constitute a mortgage, then it seems clear enough that they do constitute a conveyance of all the grantor's property to a trustee, in trust thereout to pay all the

grantor's creditors, but in unequal proportions. This seems to me to include all the essential elements of a voluntary assignment for the benefit of creditors. To adopt the language of the opinion before referred to (*24 Vr. 386*), in describing an assignment of this character, it was employed by a person who thought himself insolvent to distribute his property to his creditors through a trustee. The transfer became effective without the assent of the creditors, it conveyed to the trustee an irrevocable power to sell the property and distribute the trust, and it stripped the debtor of all interest whatever in the property.

The present case is distinguishable from *Stokes* v. *Middleton, 4 Dutch. 32.* There the question was as to the validity of a title derived through a conveyance made by a trustee without advertisement as directed by the twelfth section of the act. One of the trusts declared in the conveyance to the trustee was that he should pay the debts of the grantor, but the conveyance was not made in contemplation of insolvency for the purpose of paying debts, but to effect a settlement upon the grantor's wife and children, and the provision for the payment of debts was made in order to protect the title against any suspicion of being in contravention of the statute against fraudulent conveyances, and the debts were, in fact, all paid and no creditor complained. The opinion in that case was written by Chief-Justice Green and read at November Term, 1859. The same learned judge afterwards, when chancellor, in *Fairchild* v. *Hunt, 1 McCart. 367*, had to deal with a case much like the present, and there held that a deed, which, though not in form an assignment for the benefit of creditors, is made when the party making it is insolvent, and which is a transfer of all the grantor's residuary interest under a former assignment in New York, and all his estate, real and personal, in New Jersey and elsewhere, and creates a trust for creditors, contains all the elements of an assignment.

As there, so here, it is true that the parties probably did not understand that a statutory assignment was being made. There does not appear to have been any list of creditors; no bond was given by the trustee, nor any proceedings taken under direction of the statute; but it is to be inferred from the statement of its

contents found in the pleadings that they did make an inventory of the property conveyed and assigned. But the same absence of statutory proceedings was found in the case of *Fairchild* v. *Hunt*, and it seems clear that here, as there, the absence of these incidents peculiar to our practice cannot alter the intrinsic character of the affair, and render it any less a voluntary assignment to a trustee of all the assignor's property for the benefit of his creditors without reserve to himself. .

Having arrived at this result, the question then arises, What is the effect upon the validity of the transfer of the preference of the debt of the trustee?

In every decided case in this state previous to *Muchmore* v. *Budd* such contravention of the provisions of the statute has been held to render the transfer absolutely void.

It was so held in *Varnum* v. *Camp, 1 Gr. 326* (1833), by the opinion of Chief-Justice Ewing, adopted by his survivors on the bench as the opinion of the court after his death.

The question was considered, though not directly involved, in *Garretson* v. *Brown, 2 Dutch. 425* (1857), and the doctrine of *Varnum* v. *Camp* was reaffirmed by Chief-Justice Green, Justices Elmer, Potts and Vredenburgh. This case was affirmed on appeal. *3 Dutch. 644.* The same doctrine was recognized by Chancellor Zabriskie in *Bentley* v. *Whittemore, 3 C. E. Gr. 366*, and again by the court of errors and appeals in review of that case in *4 C. E. Gr. 462.* In *Moore* v. *Bonnell, 2 Vr. 90* (1864), the doctrine of *Varnum* v. *Camp* was reviewed by Chief-Justice Beasley and reaffirmed. In *Brown* v. *Holcomb, 1 Stock. 297* (at *p. 299*, at the bottom), such an assignment was declared to be void by Chancellor Williamson. In *Fairchild* v. *Hunt, 1 McCart. 367* (1862), before referred to, Chancellor Green held the assignment there absolutely void, because its effect and operation was to give preference to one class of creditors over another in direct violation of the terms of the statute.

The soundness of the doctrine of these cases was questioned in the prevailing opinion in *Muchmore* v. *Budd,* and it was said that it had never received the direct approval of the court of errors and appeals, but the learned judge in making this criticism ex-

pressly said that the question was not involved in the case then before that court, and the decision of it was put on the distinct ground that the transaction under review was a mortgage and not an assignment for the benefit of creditors, and, therefore, not affected by the doctrine of the train of cases so criticised.

The dictum just referred to, being upon a point not involved in the cause, must be treated as *obiter*, and not authorizing this court to decline to follow a rule adopted and acted upon in a line of cases decided both in the supreme court and in this court. I must, therefore, hold the transfers of property here in question to be absolutely void. In coming to this result I have treated the allegations of the answers of Champion and Risley as true, and hence there is no reason why, if complainant so elect, a decree to that effect should not at once be made. A receiver must, of course, be appointed to take possession of the personal property and choses in action.