THE NORTH WARD NATIONAL BANK OF NEWARK

*v.*

EDWARD L. CONKLIN and LEONORA, his wife; ISAAC W.
KING and CARRIE, his wife; JOSEPH M. SMITH, EDWARD
BACKUS, JAMES G. WILSON, ARTHUR S. BARTLETT,
LAURA B. SMITH and EMILY B. CLARK.

C. and K., partners, being insolvent, conveyed all their property to S., for
the nominal consideration of one dollar, upon the trust expressly declared
upon the face of their deeds, to convert the property into money, to use the
same to complete unfinished contracts which C. and K. had undertaken, and
for the completion of which they were responsible, and, after retaining com-
pensation for his services, to pay the surplus in his hands to all the then exist-
ing creditors of C. and K., who are named in the deeds, preferring some, who
are specially designated for that purpose. The deeds contained a provision
that S. should reconvey to C. and K. if they should, before the execution of
the trust, produce to him releases from all the creditors named.—*Held*, that
the deeds are void against a judgment creditor who has not accepted them,
within the first section of the Assignment act (*Rev. p. 36*), and within the
twelfth section of the statute of frauds (*Rev. p. 446*).

On original and supplemental bills and answers thereto.

The bills are filed by a judgment creditor for the purpose of
having the two deeds, hereafter referred to, declared void and
set aside, the judgment debtors having no other property out of
which the judgments can be satisfied than that which said deeds
purport to convey.

On the 23d of February, 1892, the day on which the first of
the complainant's judgments was recovered, Edward L. Conklin
and Isaac W. King, who were partners, trading as William
King's Company, with their wives, executed the deeds in ques-
tion, dating them on the 18th of that month.

One of the deeds, after reciting that Conklin and King had
theretofore carried on business as copartners, and had become
embarrassed and were unable to continue their business, because

North Ward National Bank *v.* Conklin.

of "the litigations constantly brought against them," and that they were anxious that the whole of their estate should be applied to the payment of their debts in a manner thereinafter specified, and that if there should be a surplus of estate after such payment that it should be returned to them, purported, for the consideration of one dollar, to convey to the defendant Joseph M. Smith all the property of the firm, including its real estate, goods, chattels, moneys, rights and credits, "and all other assets of every nature, kind and description belonging to said business," upon the following trust, to wit:

1. To sell and convert into money said estate, as speedily as possible, without sacrifice of the interest of the creditors mentioned, and to lease pending sale.

2. To complete and carry out unexecuted contracts of the firm, or to sublet, assign or compromise them.

3. To pay wages of employes and other expenses, including expenditures for material, incident to the completion of the contracts; also to pay taxes and interest on encumbrances on the property conveyed.

4. To retain, as compensation for his services, a sum equal to the commissions usually allowed to executors, administrators and the like. To pay all surplus, after the payment of specified debts, to Conklin and King.

5. To pay forty-eight specified creditors the sum set opposite their respective names, "consecutively and not simultaneously."

6. After those creditors should be paid, to pay fifty-six other creditors *pro rata*, simultaneously, until they should be paid.

7. If Conklin and King, or either of them, should, before the trust should be executed, obtain and present to Smith releases from the creditors named, then to return to them the estate or so much of it as should remain.

The other deed was made by Isaac W. King and wife. It purported to convey, in consideration of one dollar, to Joseph M. Smith, in trust, a tract of land in Essex county, and also all the right, title and interest of King in and to his father's estate, and in and to seven tracts of land which are described in the deed, belonging to the father's estate, one of which tracts is in

the State of Florida. This deed, like the other, contains a recital that the firm to which King belonged has become embarrassed and is unable to continue its business, and that it is desired that its whole estate should be applied to the payment of its debts, adding thereto that the firm had conveyed its estate, by deed of even date, to Smith, and that King is possessed of other property which he desires to be applied to the payment of his debts and obligations, and that he has been advised that his separate property is primarily liable for the payment of his individual debts. The trust upon which the deed is made, is as follows :

1. To sell and convert the property into money, and first pay thereout individual creditors of King, designated in the deed, *pro rata.*

2. To complete and carry out the unexecuted contracts of the firm, William King's Company, or to sublet, assign or compromise them.

3. To pay wages of employes and other expenses, including expenditures for materials, incident to the completion of the contracts, and to pay taxes and interest on encumbrances on the property of the firm, William King's Company.

4. To retain compensation as in the other deed provided, and to render all the surplus, after the payment of specified debts, to King.

5. To pay the same forty-eight specified creditors of the firm as in the other deed provided.

6. After the payment of those creditors, to pay the fifty-six other creditors of the firm in the same manner as provided in the other deed.

7. If the said firm or King should, before the trust be executed, obtain and present to Smith releases from the creditors named, then to reconvey to King the property conveyed.

Upon the delivery of these deeds to him, Smith caused them to be recorded and entered into possession of the premises which they purported to convey, as far as he could do so, and since then has retained that possession and proceeded to execute the trusts. He has employed Isaac W. King as a clerk to assist

him in his performance of that duty. The lists of creditors set forth in the deeds were intended to include all firm creditors and all the creditors of King individually, and did include all actually existing creditors at the date of the deeds, but did not include the holders of commercial paper upon which the firm was then contingently liable as endorser, which had not reached maturity. When the deeds were made, the firm was actually indebted to the complainant in the sum of $750, and that amount was classed and enumerated with the firm's debts that were to be paid secondarily, *pro rata*. The partners, however, were then endorsers upon some $20,000 worth of negotiable paper, not due, which the complainant had discounted for them. Afterwards, about $17,000 worth of this paper was paid at maturity by the makers thereof, and for the remainder, which was not paid, the complainant has recovered, since the filing of the original bill, the several judgments which are set out in the supplemental bill.

The complainant has not accepted or ratified the deeds in any way, but, on the contrary, has recovered judgments upon all its claims, and, under them, has caused the properties included in the deeds to be levied on.

When the deeds were made, it was unknown whether, in the execution of the trusts, Smith would realize a surplus beyond the payments he was required to make.

*Mr. M. J. De Witt*, for the complainant.

*Mr. Philemon Woodruff*, for the defendants Conklin and wife, King and wife, and Smith.

*Mr. Amzi D. Taylor*, for the remaining defendants.

THE CHANCELLOR.

It is claimed that the deeds here attacked are, under the ruling of the court of errors and appeals in *Muchmore* v. *Budd*, *24 Vr. 369*, to be regarded as lawful mortgages and not as assignments in trust.

North Ward National Bank *v.* Conklin.

In the case referred to, a debtor, by bill of sale, transferred all his property, except his wearing apparel, to one who, in consideration thereof, paid for certain goods delivered to the debtor and satisfied a judgment against him, under a parol agreement, however, that the assignee would dispose of the property at private or public sale, and, after satisfying his advances, pay designated creditors specified amounts and return the surplus, if any over the payments, to the debtor, the debtor having the right, meanwhile, to redeem, by himself making the payments provided for.

It is noted, in that case, that there was a conveyance of the debtor's entire estate, to be disposed of to pay designated debts. The arrangement did not contemplate provision for all existing creditors or a deliberate delay in the disposition of the property which would tend to defeat or delay any and all creditors, whether preferred, subordinated to the preferred, or omitted altogether, in reaching the equity of redemption.

In the present case the debtors sought to transfer their entire estate upon a trust expressly declared in the instrument that it should first be held in service of the debtors to complete certain contracts, for the performance of which the debtors were responsible, and thus terminate their liability therefor, unless such liability could be terminated by the trustee, by assignment or compromise of the undertakings, and, second, that it should be ultimately distributed among all creditors existing at the date of the deeds, according to the trust, which gave preference to some of them.

It is thus apparent that there is a most conspicuous distinction between the two cases. In *Muchmore* v. *Budd* the entire estate was devoted to the payment of favored creditors, without reference to those who were not favored, while in the present case the instrument creates a trust for distribution among *all* creditors, some of them being expressly preferred. In *Muchmore* v. *Budd* there was to be an immediate application of the property, while in the case considered all creditors are to be delayed until the debtors' liability to loss by reason of uncompleted contracts shall be terminated. In *Muchmore* v. *Budd* the grantee gave

North Ward National Bank v. Conklin.

valuable consideration for the instrument, in the shape of money advances, while here so nominal a consideration supports the trust, that the trust must, in every sense, be esteemed voluntary. It is true there is here reserved that which is claimed to be an equity of redemption, but it is couched in terms less consonant with the theory of payment of the debts than with suggestion of the exaction of forgiveness or compromise, from unwilling creditors, by the enforced situation which their debtors have created. It is observed that the deeds do not contemplate reconveyance upon payment of the creditors or upon tender of a sufficient sum of money to the trustees, to satisfy them, but reconveyance upon the production of releases, by which the only effectual forgiveness of debts may be had. *Tulane* v. *Clifton, 2 Dick. Ch. Rep. 351; S. C. on appeal, 3 Dick. Ch. Rep. 310; Landon* v. *Hutton, 5 Dick. Ch. Rep. 500*. Such a reservation does not intend redemption by payment, but stands merely as a precautionary provision, available to the debtors in case of settlement with their creditors. The deeds do not declare that the property is to be held as security for the payment of the creditors, but that it shall be appropriated to their payment after it shall have served to save the debtors from further responsibility by reason of their uncompleted contracts.

I do not perceive any warrant for regarding the deeds otherwise than that which they plainly purport on their faces to be, voluntary assignments for the benefit of creditors.

Regarding them as assignments for the benefit of the creditors, they appear, upon well-settled authority in this state, to be void upon the ground that, in making preferences, they contravene the statute to secure to creditors an equal and just division of estates of debtors who convey to assignees for the benefit of their creditors.

The first section of the statute referred to (*Rev. p. 36*) is in this language:

"That every conveyance or assignment made by a debtor or debtors of his, her or their estates, real or personal, or both, in trust to the assignee or assignees for the creditors of such debtor or debtors, shall be made for their equal benefit, in proportion to their several demands, to the net amount that

North Ward National Bank *v.* Conklin.

shall come to the hands of said assignee or assignees for distribution; and all preferences of one creditor over the other, or whereby any one or more shall be first paid or have a greater proportion in respect of his, her or their claim, than another, shall be deemed fraudulent and void, except mortgage or judgment creditors, when the judgment has not been by confession for the purpose of preferring creditors."

In *Tillou* v. *Britton, 4 Halst. 120, 138* (in 1827), Mr. Justice Drake, commenting upon this statute, said that its operation was not intended to be extended to the case of a transfer by a failing debtor of a single portion of property to a creditor in satisfaction of his debt, but must be limited to cases where there is something like universality in the assignment, or, in the language of the act, where the debtor's *estate* is assigned.

The deeds in question possess this universal character, both as regards property and as regards creditors, and they are thus removed from the region of simple preference of a single creditor or a few chosen creditors, which has always been esteemed to be lawful. They are general assignments of all the debtors' property for the benefit of all their existing creditors.

In *Varnum* v. *Camp, 1 Gr. 326,* Chief-Justice Ewing (in the supreme court in 1833) said of such assignments for creditors: "The statute declares how they shall be made, that is to say, for the equal benefit of the creditors, and not merely that such shall be the effect in what way soever made. An assignment, therefore, made in a manner prohibited and forbidden must be invalid. The express denial of preferences, is in truth but an amplification of the antecedent clause of the statute, and without really adding anything to its extent or perhaps to its force, serves to express in distinct terms the legal effect and operation of that prior clause. It follows then that where an assignment not made for the equal benefit of the creditors, but whereby a preference is sought to be given to any one not a creditor by mortgage or judgment, over another, is, in contemplation of law, fraudulent and void."

In *Owen* v. *Arvis, 2 Dutch. 22* (in the supreme court in 1856), Chief-Justice Green approved this interpretation of the statute and proclaimed its policy prohibiting preferences to be enforce-

able where the assignment is, in substance, though not in form, a trust for creditors, and in this he is followed in this court by the well-considered cases of *Fairchild* v. *Hunt, 1 McCart. 367,* and *Livermore* v. *McNair, 7 Stew. Eq. 478.*

The construction of the statute announced in *Varnum* v. *Camp* was approved by the supreme court, in 1857, in *Garretson* v. *Brown, 2 Dutch. 425,* upon the understanding that it decided an assignment in trust for creditors to be void, where the preferences are incorporated in the assignment itself, and its decision in·that case was affirmed by the court of errors and appeals, without opinion. *3 Dutch. 644.* The same meaning was given to the statute by Chancellor Williamson, in 1853, in *Brown* v. *Holcomb, 1 Stock. 297 ;* by Chancellor Green, in 1862, in *Fairchild* v. *Hunt, 1 McCart. 367 ;* by the supreme court, in 1864, in *Moore* v. *Bonnell, 2 Vr. 90 ;* by Chancellor Zabriskie, in 1867, in *Bentley* v. *Whittemore, 3 C. E. Gr. 366 ;* and by the court of errors and appeals, in 1868, in the same case, *4 C. E. Gr. 462 ;* by the supreme court, in 1879, in *Hurd* v. *The City of Elizabeth, 12 Vr. 1 ;* by the court of errors and appeals, in 1884, in *Flagg* v. *Baldwin, 11 Stew. Eq. 224 ;* and also by the court of chancery and the court of errors and appeals, respectively, in the later cases of *Van Winkle* v. *Armstrong, 14 Stew. Eq. 402 ; Kimball* v. *Lee, 16 Stew. Eq. 277 ; Green* v. *Wallis Iron Works, 4 Dick. Ch. Rep. 54,* and *Stites* v. *Champion, 4 Dick. Ch. Rep. 446.* While the courts so construed the statute, the legislature stamped its approval of their construction, in the Revisions of 1846 and 1874, by retaining the exact language to which the courts had given so plainly defined a meaning. Indeed, this meaning of the statute has for sixty years, and until the *dictum* hereafter referred to, had the unquestioning approval of the bench, bar and legislature of this state, and it appears to me to be now too late to depart from it. If the court of errors and appeals has never directly adjudged that a preference in an assignment under the act operates to avoid the transfer *in toto,* as is suggested by the learned judge who wrote the opinion of the majority of that court in *Muchmore* v. *Budd,* it has by most unmistakable implication repeatedly so held in cases which I have above cited.

The doubt expressed in *Muchmore* v. *Budd,* as to the correctness of this accepted interpretation of the statute expressly appears as mere *dictum,* which, although entitled to respect as the individual opinion of the eminent judge who wrote the opinion in that case, does not require me to put upon the Assignment act the new meaning suggested. I feel bound, not only by precedent, but by my own judgment, to give the statute the meaning which has so long been accorded to it, and to hold that the deeds in question are void, because they expressly create preferences.

But my conclusion need not rest upon this ground alone. The deeds are void, also, under the twelfth section of the "Act for the prevention of frauds and perjuries" (*Rev. p. 446*), which provides that every conveyance of lands, tenements, hereditaments, or goods and chattels, or of any estate or interest therein, with intent to hinder, delay or defraud creditors and others of their lawful actions, debts, damages or demands, shall be deemed and taken as against those whose actions, debts &c. may be hindered or defeated thereby, to be utterly void and of no effect.

Attention has been directed to the provision in the deeds which contemplates the retention of the property conveyed, or the proceeds of its sale, by the trustee, until certain contracts, upon which the debtors were liable, shall be performed, assigned or compromised by the trustee, to the obvious end that the debtors may be relieved from further responsibility through the continued use of their property by the trustee in their behalf.

The conspicuous effect of this arrangement is to delay all creditors until the service to which the debtors have first put the property shall be ended. And this may be a perilous service which will eventually defeat the creditors, for the trust contemplates the partial and perhaps complete exhaustion of the property in the payment of wages and in the purchase of materials in its execution. It nowhere appears that the contracts will be profitable or that they will even return the expenditures upon them.

A vigilant creditor is entitled to have the property of his debtor subjected, by due course of law, to the immediate payment of his debts, and any disposition by the debtor of that

property which will defeat this right is, within the statute, a fraud upon him. There need not be moral fraud in the transaction; it is enough, in law, that the effect of the transfer will be to hinder, delay or defeat the creditor, for the debtor is presumed to intend the necessary consequence of his acts. *Owen* v. *Arvis, supra; Knight* v. *Packer, 1 Beas. 214; Servis* v. *Nelson, 1 McCart. 94; National Bank of the Metropolis* v. *Sprague, 6 C. E. Gr. 530; Walker* v. *Hill's Executors, 7 C. E. Gr. 528; De Witt* v. *Van Sickle, 2 Stew. Eq. 209; Risley* v. *Parker, 5 Dick. Ch. Rep. 284.* The statute will not be avoided by the claim or excuse that the debtor made the transfer to prevent the sacrifice of his property and thus protect both himself and his creditors. *Livermore* v. *McNair, supra.*

If convincing evidence of a special intent to hinder and delay the complainant were required in this case, I need only refer to the fact that these deeds purport to have been made while the complainant was in pursuit of the property conveyed, and were, in fact, recorded on the very day upon which he entered his first judgment.

The deeds are utterly void against the complainant, and will be set aside.